**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RONNIE L. BRYANT** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 10-532-RET-DLD** |
| **EXXON MOBIL CORPORATION, ET AL.** | |

## MAGISTRATE JUDGE'S REPORT

This matter is before the court on plaintiff's motion to remand (rec. doc. 9), which is opposed and has been referred to the undersigned for a report and recommendation (rec. doc. 12). This matter was removed based on diversity jurisdiction, 28 U.S.C. §1332, and the issue before the court is whether the non-diverse Executive Officer defendants were improperly joined to destroy diversity.

### Background

Plaintiff Ronnie L. Bryant, a Louisiana citizen, alleges that at various times between 1973 and 2009[1], he was employed as a contract worker at the facility owned and operated by Exxon Mobil in Baton Rouge, Louisiana (Exxon Mobil) (rec. doc. 1-7). Plaintiff further alleges that while working at the Exxon Mobil facility, "he was occupationally exposed to unreasonably dangerous amounts of toxic and carcinogenic chemicals including benzene coke dust, asbestos, and/or other deadly substances ..., which were manufactured, distributed and/or in the care, custody and control of the premises owner, Exxon Mobil

---

[1] Plaintiff's petition alleges that he worked as a contractor at various times between "approximately 1973-2009," but his memorandum in support of his motion to remand states "between 1975 and 2009" (rec. docs.1-7 and 9-1).

Corporation." Id. As a result of exposure to these toxic substances, plaintiff alleges that he contracted a toxic-related disease and/or cancer. Id.

On July 12, 2010, plaintiff filed suit against Exxon Mobile Corporation, Donald H. Daigle, Keith Baugher, and William L. Rainey in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. Id. Exxon Mobil is a New Jersey Corporation, with its principal place of business in Texas (rec. doc. 1). Daigle, Baugher, and Rainey are all alleged to be Louisiana citizens who were "Executive Officers" of Exxon Mobil during some or all of plaintiff's employment with Exxon Mobil. Id. Plaintiff makes the following allegations against Exxon Mobil and its Executive Officers:

6.

Exxon Mobil Corporation delegated to its Executive Officers its responsibility to provide plaintiff with proper supervision, safety instruction, and warnings concerning hazardous conditions in the workplace, and generally with a safe place to work, or said executive officers actually undertook to provide such operational supervision, instructions, and warnings. Plaintiff specifically alleges that the Exxon Mobil Executive Officers had the following responsibilities delegated to them by their employer or actually undertook to perform the following duties:

1. To inspect, approve, and supervise the work of plaintiff and his co-employees;
2. To see that proper safety rules were adopted, promulgated, and enforced as concerned the use of respiratory protection devices and other protective equipment;
3. To see that plaintiff and his co-employees performed the duties pertaining to their work in a proper, safe, and workmanlike manner;
4. To see that plaintiff and his co-employees used safe and sound practices;
5. To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices, engineering controls, monitoring, and employee safety;
6. To keep abreast of state of the art knowledge as it pertains to the dangers associated with exposure to toxic substances including, but not limited to benzene;

7. To provide adequate warnings, monitoring, physical examinations, engineering controls, safety equipment, ventilation, and breathing apparati [sic], which were necessary in order to prevent plaintiff from being harmed by exposure to toxic substances including, but not limited to, benzene in the environment in which he was required to work;

8. To make certain that employees including the plaintiff was provided a safe working environment free from unreasonable chemical inhalation;

9. To comply with applicable state and federal regulations regulating workplace exposures; and

10. To provide plaintiff with a safe place to work.

7.

Not only did the Exxon Mobil Executive Officers have the duties and responsibilities set forth in the proceeding paragraph, they in fact actually undertook on an operational basis to perform those duties and fulfill those responsibilities. They negligently failed to carry out these undertakings and assumed duties. The Exxon Mobil Executive Officers knew or should have known of the unreasonably dangerous exposures of plaintiff to the toxic substances and knew or should have known of the danger to plaintiff's health caused by working in an atmosphere polluted with toxic substances without proper safeguards. The Exxon Mobil Executive Officers knew or should have known that the injuries sustained by plaintiff would have been avoided by the use of safety procedures and safeguards.

8.

The Exxon Mobil Executive Officers negligently failed in the performance of the delegated responsibilities and actual undertakings to provide plaintiff with a safe place to work in the following particulars:

1. Failing to provide reasonable periodic medical examinations of plaintiff;
2. Failing to install and carry out a reasonable medical monitoring program;
3. Failing to properly ventilate the area in which plaintiff was required to work;
4. Failing to provide reasonable safety appliances including, but not limited to, respiratory protection;
5. Failing to provide reasonable engineering controls including, but not limited to, monitoring devices and closed systems;
6. Failing to provide proper personnel monitoring and follow up for chemical exposures;

7. Failing to warn plaintiff of the dangers posed by the atmosphere in which he was required to work, including the dangers associated with exposure to toxic substances;
   8. Failing to follow the requirements of applicable state and federal regulations pertaining to workplace exposures to toxic substances;
   9. Failing to monitor and measure the levels of toxic substances existing in plaintiff's environment;
   10. Failing to keep abreast of and follow scientific and engineering knowledge regarding the dangers of and protection against occupational exposure to toxic substances; and
   11. Failing to properly supervise and train employees in proper handling and use of toxic substances.

(rec. doc. 1-7).

Defendant Exxon Mobil removed this matter based on diversity jurisdiction alleging that non-diverse Executive Officer defendants were improperly joined and that their citizenship should be disregarded for purposes of determining diversity of citizenship. Plaintiff filed a motion to remand, which is now before the court for a report and recommendation.[2]

**Arguments of the Parties**

Plaintiff argues that this court does not have subject matter jurisdiction over this case because diversity of citizenship does not exist ( rec. doc. 9). Plaintiff alleges that his claim against the non–diverse Executive Officer defendants destroys diversity jurisdiction. Plaintiff argues that the Executive Officer defendants were delegated specific duties by Exxon Mobil and/or "actually undertook to perform specific duties" which gave rise to

---

[2] Pursuant to La. R.S. 23:13, employers have a statutory duty to provide their employees with a reasonably safe workplace. Based on plaintiff's pleadings, his alleged exposure to toxic substances occurred, at least in part, prior to 1976, when there was no statutory bar to a suit by an employee against an executive officer for recovery of damages based on a breach of his duty. *Powell v. B.P. Chemicals, Inc.*, 847 F.Supp. 444 (M.D. La. 1993), citing *Talluto v. Patchen*, 370 So.2d 618 (La. App. 1979); see also La. R.S. 23:1032. Thus, based on the undisputed facts alleged by plaintiff, it appears a cause of action existed in favor of plaintiff against defendants for injuries sustained as a result of exposure to toxic substances prior to 1976.

personal duties owed to plaintiff. As a result of these personal duties, plaintiff argues that the Executive Officer defendants can be held personally liable for their actions or inactions; therefore, they were not improperly joined to destroy diversity. Additionally, plaintiff seeks attorney's fees and costs associated with improperly removing this matter.

Defendant Exxon Mobil responds by arguing that plaintiffs have no reasonable possibility of recovery against the Executive Officer defendants; therefore, their citizenship should be disregarded for purposes of determining diversity of citizenship. Defendant Exxon Mobil argues that plaintiff is unable to establish that the Executive Officer defendants breached a personal duty owed to plaintiff, which would make them personally liable to plaintiff.

**Law and Discussion**

The removal statute, 28 U.S.C. §1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007); *Shamrock Oil & Gas Corp. V. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). Remand is proper if at any time the court lacks subject matter jurisdiction. See 28 U.S.C. §1447©. The party seeking removal has the burden of proving either diversity or federal question jurisdiction. *Garcia v. Koch Oil Co. of Texas, Inc.,* 357 F.3d 636 (5th Cir. 2003), *citing Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998), and *Gutierrez v. Flores,* 543 F.3d 248 (5th Cir. 2008). The party seeking to establish diversity jurisdiction must prove the existence of diversity of citizenship and amount in controversy.

The removing defendant bears the burden of demonstrating improper joinder. E.g., *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990). Improper joinder of

a non-diverse party can be proven by showing "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308 (5th Cir. 2005), *citing Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc). The court can resolve improper joinder claims by "piercing the pleadings" and considering summary judgment-type evidence such as affidavits and deposition testimony. *Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98, 100 (5th Cir. 1990). The court resolves all disputed questions of fact in favor of the non-removing party, and the burden is on the removing party to show that there is no reasonable possibility of recovery against the party whose joinder is questioned. *Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994), citing *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40 (5th Cir. 1992). Fraud in the pleadings is not an issue in this case. Rather, defendant seeks to prove improper joinder by establishing that plaintiff has no reasonable possibility of recovery against the Executive Officer defendants because they did not owe a personal duty to plaintiff.

The circumstances under which a corporate officer or employee can be held individually liable for injuries to a third persons under Louisiana law were explained in *Canter v. Koehring*, 283 So.2d 716 (La. 1973). The Fifth Circuit, in *Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994), embraced the guidelines as set forth by the Louisiana Supreme Court in *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973), in determining whether personal liability may be imposed on an employee:

1. The employer must owe a duty of care to the third person, the breach of which has caused the damage for which recovery is sought;

2. This duty is delegated by the employer to the employee;

3. The employee has breached this duty through personal fault (as contrasted with technical or vicarious fault); and

4. With regard to personal fault, personal liability cannot be imposed upon an employee simply because of this general administrative responsibility for performance of some function of employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate, he is not personally at fault and liable for the performance of this responsibility, unless he personally knows or personally should know of its non- performance or mal- performance and has nevertheless failed to cure the risk of harm.

Id. at 936.

Thus, defendant Exxon Mobil has the burden of proving that plaintiff has no reasonable possibility of recovery against the Executive Officer defendants. The courts in *Canter* and *Ford* explain that the breach of a duty through personal fault occurs when:

[t]he defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well *as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.*

*Ford*, 32 F.3d at 936; *Canter*, 283 So.2d 721 (emphasis added).

Plaintiff alleges that Exxon Mobil delegated to the Executive Officer defendants its responsibility to provide plaintiff with "proper supervision, safety instruction, and warnings concerning hazardous conditions in the workplace, and a generally safe place to work," and defendants "actually undertook to provide such supervision, instructions, and warnings." (rec. doc. 1-7). The petition outlines specific duties and responsibilities allegedly delegated by Exxon Mobil and undertaken by defendants, including supervising plaintiff and being aware of, promulgating, and enforcing safety rules and precautions affecting plaintiff's work

environment. Id. Thus, if one of the Executive Officer defendants was responsible for safety and providing a safe work environment for plaintiff and he "knew or should have known of the unreasonably dangerous exposures . . . to toxic substances" or "knew or should have known of the danger to plaintiff's health caused by working in an atmosphere polluted with toxic substances without proper safeguards," as alleged by plaintiff, and nevertheless failed to respond in a reasonable prudent manner to those risks, then there certainly is the possibility of liability against one or more of the Executive Officer defendants for any harm suffered by plaintiff as a result of being exposed to toxic substances.

The allegations in plaintiff's petition are clear and establish that defendants owed a personal duty to plaintiff to, at the least, provide a safe working environment. Defendants, Daigle, Baugher, and Rainey, each offer their affidavits in an effort to establish that they did not owe a personal duty to plaintiff (rec. doc. 12, Exhibits A, C, and D). All three defendants admit to working at the Exxon Mobil facility at various times during the time at which plaintiff worked at the facility. Id. Each defendant identifies his various job titles and generally summarizes his job duties while working at the Exxon Mobil facility. Defendants' affidavits state that they were not personally responsible for "directing, instructing, or supervising contract employees, such as [plaintiff]," regarding how to perform their job duties and that they did not delegate the responsibility to do so to anyone under their supervision (rec. doc. 12, Exhibits A, B, and D). Further, defendants state that "Contractors were responsible for direct supervision and instruction of their employees on a day-to-day basis." Id.

Plaintiff's alleged injuries are not the result of an isolated occurrence or incident, but rather are the result of alleged exposure to toxic substances in his work environment over an extended period of time. Plaintiff's allegations regarding the conditions of his work

environment and the safety rules and precautions that should have been adopted to protect him from exposure to toxic substances implicate broad scale issues over which defendants are alleged to have had responsibility and which are not sufficiently addressed by defendants' attestations that they were not responsible for supervision of plaintiff's "day-to-day" activities.  Thus, defendants' affidavits are insufficient to prove that plaintiff cannot establish a cause of action against them because they only address some of the allegations in the petition and fail to refute all of plaintiff's allegations. Defendant, therefore, failed to carry its burden of proving that the Executive Officer defendants were improperly joined to destroy diversity.

The cases cited by defendant in support of its position are distinguishable in that evidence was offered in those cases that specifically addressed the plaintiff's allegations and proved that the non-diverse improperly joined defendant did not owe a personal duty to plaintiff.  For example, the affidavit submitted by the plant manager defendant in *Hornsby V. Alliedsignal, Inc*, 961 F.Supp. 923, 929 (M.D. La. 1997), established that the plant manager did not owe a personal duty to inspect the plant machinery or have knowledge of any condition that would cause a release at the plant.  Affidavits submitted in *Freeman v. Witco Corp.*, 984 F.Supp. 443, 459 (M.D. La 1997), establish that the plant manager defendant was not the manager of the plant where the explosion occurred nor was he present the day the events giving rise to the explosion occurred, and the safety manager defendant was not present the day the explosion occurred; therefore, neither owed a personal duty to plaintiff.  The evidence presented in the cited cases directly addressed the specific incidents alleged in the petitions and allowed the court to conclude with certainty that plaintiffs could not recover against the non-diverse defendants.  This case,

in contrast, does not involve a specific incident on a date certain, but rather involves long-term conditions at Exxon. Thus, considering the facts in evidence, in the light most favorable to plaintiff, defendant Exxon Mobil has failed to prove that there is no reasonable possibility of recovery against at least one of the Executive Officer defendants; therefore, the court finds that the non-diverse Executive Officer defendants have not been improperly joined to destroy diversity jurisdiction.

Plaintiff requests the payment of fees and costs incurred as a result of the removal as allowed by 28 U.S.C. §1447(c). Section 1447(c) provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The award is within the discretion of the district court and is to be guided by the standard that, "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonably basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Whether a party was improperly joined to destroy diversity is an extremely fact intensive inquiry, and defendant did not lack an objectively reasonable basis for removing this matter considering all of the facts that had to be considered to reach the court's conclusion. Thus, plaintiff's request for fees and costs should be denied. Accordingly,

**IT IS RECOMMENDED** that plaintiff's motion to remand and the imposition of fees and costs (rec. doc. 9) should be **GRANTED IN PART AND DENIED IN PART** in that the motion to remand is **GRANTED** and this matter should be **REMANDED** to the **19th Judicial**

**District Court, Parish of East Baton Rouge, State of Louisiana**, and the motion for fees and costs should be **DENIED.**

Signed in Baton Rouge, Louisiana, on May 19, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RONNIE L. BRYANT**             **CIVIL ACTION**

**VERSUS**            **NUMBER 10-532-RET-DLD**

**EXXON MOBIL CORPORATION, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 (fourteen) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 19, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**